RODNEY R. PARKER (4110)
LASHEL SHAW (13862)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah  84145
Telephone:  (801) 521-9000
Email: rrp@scmlaw.com; lss@scmlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| 1% FITNESS LLC, a Utah limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL BOYD, an individual; and JODY ROOKSTOOL, an individual; ZACH BARKER, an individual; QUICKFRESH, LLC, a Utah limited liability company; COMPASS SERVICES MANAGEMENT, LLC; JOHN DOES 1 THROUGH 10, <br><br> Defendants. | COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS <br><br> JURY DEMANDED <br><br> No. **2:22-cv-00415-BSJ** <br><br> Judge **Bruce S. Jenkins** |

Plaintiff 1% Fitness LLC ("1% Fitness") brings this Complaint against Defendants QuickFresh, LLC, Jody Rookstool, Dan Boyd, Zach Barker, and Compass Services Management, LLC (collectively, "Defendants") for, *inter-alia*, misappropriation of 1% Fitness trade secrets, embezzlement, breach of contract, and tortious interference.  1% Fitness,

on personal knowledge as to its own acts, and upon information and belief as to all others based on investigation, alleges as follows:

## SUMMARY OF THE ACTION

1.      1% Fitness manufactures and sells in interstate commerce fresh, pre-cooked, pre-packaged, custom designed and precisely-calculated (fat, carbohydrate and protein-ratioed) meals, to help customers conveniently prepare, eat and meet their health and weight loss goals.  Until recently, 1% Fitness was a market leader, thanks to years in the business and its investment in research and development and cultivating industry relationships.  Dan Boyd (1% Fitness' former Chief Operating Officer) and Zach Barker (1% Fitness' former General Manager), collectively referred to herein as the "Management Defendants", each with no prior experience in this fresh meals niche, signed non-compete and confidentiality agreements and were trusted with access to 1% Fitness' entire business, including 1% Fitness' proprietary recipes and meal creation software and processes, together with manufacturing processes, confidential business plans, and customer and vendor accounts.

2.      While still employees of 1% Fitness, the individual Management Defendants began secretly working with Defendant Jody Rockstool to start a directly competing company, QuickFresh, LLC ("QuickFresh"), in violation of their contracts and in disregard of their duties of loyalty and duties as company fiduciaries.  Defendants have been using 1% Fitness' confidential and trade secret information including about 1% Fitness' vendor network, customers, strategic plans, manufacturing processes, and confidential and proprietary meal compilation processes, designs, software and recipes.  Defendants have also

copied 1% Fitness' intellectual property, misrepresented 1% Fitness' successes as its own in promoting QuickFresh's products, and directly stolen money from 1% Fitness.

3.      Defendants' actions are in breach of federal and state law and are irreparably harming 1% Fitness through the erosion of its goodwill and misuse of its trade secrets. Defendants' illegal appropriation of 1% Fitness' hard work and investment have enabled QuickFresh to, in essence, duplicate many of the valuable offerings of 1% Fitness and take many of 1% Fitness' customers and key contracts, replacing 1% Fitness as a market leader in a matter of only a few months.

4.      1% Fitness brings this lawsuit in order to prevent further harm to its business arising from Defendants' unlawful conduct, and seeks to enjoin Defendants from utilizing or disclosing 1% Fitness' trade secrets and enjoin the Management Defendants from continuing to violate the narrow, reasonable restricted covenants contained in their agreements with 1% Fitness.

## PARTIES

5.      1% Fitness LLC is a Utah limited liability company in good standing with its principal place of business in Utah County, Utah.

6.      Defendant Daniel Boyd ("Boyd") is an individual residing in Utah County, Utah.  Boyd is an enterprise partner of Defendants Jody Rookstool and QuickFresh, LLC and is a founder and officer of QuickFresh, LLC.  However, as set forth herein, he previously worked for 1% Fitness, first as a consultant through Defendant Company Services Management, LLC and then as an employee and executive officer.  As a condition his work with 1% Fitness, Boyd signed a fully enforceable Confidentiality and Non-Disclosure Agreement which is attached hereto as Exhibit A.

7. Defendant Compass Services Management, LLC ("CSM"), a Utah limited liability company, has its principal place of business in Utah County, State of Utah. CSM is owned by Boyd and was hired, together with Boyd, to provide consulting services to 1% Fitness. As a condition of its work with 1% Fitness, CSM signed a fully enforceable Confidentiality and Non-Disclosure Agreement which is attached hereto as Exhibit B.

8. Defendant Jody Rookstool ("Rookstool") is a resident of Utah County, Utah and a former founder of Built Brands, LLC DBA Built Bar. Today, Rookstool is an owner of QuickFresh.

9. Defendant QuickFresh is a Utah limited liability company, with its principal place of business in Utah County, Utah, within 60 miles of a 1% Fitness facility. QuickFresh was formally organized in the State of Utah on or about March 31, 2021 after some, but not all, of the matters set forth herein occurred.

10. Defendant Zach Barker ("Barker") is a resident of Utah County who until December, 2021 was the General Manager of 1% Fitness whose activities are restricted under a robust confidentiality, non-use, non-solicit and non-competition agreement, a copy of which is attached hereto as Exhibit C.

11. Defendants John Does 1 though 10 are persons involved in the harm alleged herein who are as yet unknown, but who will be discovered hereafter as discovery progresses in the case and added to this action by amendment.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because 1% Fitness' federal Defendant Trade Secrets Act ("DTSA") claim, brought under 18 U.S.C. § 1836, *et. seq.*, and 1% Fitness' federal Lanham Act claims, brought under

15 U.S.C. § 1051, *et seq.*, raise federal questions.  This Court has supplemental jurisdiction

over the remaining claims pursuant to 28 U.S.C. § 1367.

13.     Venue in this district is proper under 28 U.S.C. § 1391 because substantially

all of the acts and subject matter upon which the claims are based occurred in this judicial

district and Defendants reside, or have their principal place of business, in this judicial

district.  Furthermore, Defendants misappropriated 1% Fitness' trade secrets which are

processed, created, and housed in Utah.

## EVENTS GIVING RISE TO THIS ACTION

### Timeline of Malfeasance by Defendants

14.     Due to the extent and level of malfeasance by Defendants, below is a time-

line of events presented as a very general overview of the allegations to follow:



### 1% Fitness' Business and Valuable Trade Secrets

15.     From its inception in 2013, 1% Fitness has invested thousands of hours of

time and effort and millions of dollars in research, development, and marketing to create

a meal-based health system centered on pre-cooked meals in balanced ratios to help

customers meet their health and weight loss goals, which investment has resulted in tremendous success for the company and its customers.

16.     1% Fitness has a subscription sales model with carefully designed recipes and meals which could not be replicated without investing similar amounts of time and money, including significant trial and error.  The meal plans are carefully formulated and balanced not only for nutrition but also to optimize costs and manufacturing processes.

17.     1% Fitness has developed proprietary tools and processes to streamline the development and production of its meals, including an extensive electronic database and complex custom electronic calculators.

18.     The profitable delivery and sale of fresh, pre-prepared meals throughout the country presents significant logistical challenges, including relating to food quality and safety.  1% Fitness has spent years developing proprietary and confidential information about how to most efficiently manage and prepare its packaging and shipping methods and processes.

19.     1% Fitness has also generated proprietary business strategies and plans to sustain the company's continued growth and success, as well as confidential (or confidential compilations of) key information about the marketplace, effective advertising, vendor and partnership relationships and prospective targets, and cost-cutting measures, through nearly a decade of concentrated effort focused on analyzing its past performance for purposes of future improvement.

20.     Because of this investment, 1% Fitness' customers have come to associate 1% Fitness with high-quality and effective weight loss meals, and 1% Fitness has accrued

significant goodwill in the marketplace as a result, directly leading to its commercial success.

21.     Of particular importance to 1% Fitness are its "white label" partnerships, whereby 1% Fitness manufactures and provides meals for sale by another company under its own branding.  Given the nature of these relationships, 1% Fitness has accrued considerable information about these customers' anticipated needs in order to serve them, and uses that confidential information to maintain its goodwill with these customer partners.

22.     Collectively, the recipes, tools, processes, formulations, strategies, plans, compilations, analytics, and other information referred to in paragraphs 17-22 of this Complaint shall be referred herein as the "Trade Secrets."  Each of the Trade Secrets provides independent economic value by not being generally known publicly or by competitors.

### 1% Fitness Protects its Trade Secrets and Valuable Company Information

23.     1% Fitness has put in place multiple levels of controls and processes to protect the innovation and progress that make its system possible.

24.     1% Fitness' physical facilities are secure.  Among other things, they are accessible only with protected keys and/or digitally issued cards.  Third parties are not allowed unaccompanied access to the manufacturing facilities.

25.     Similarly, digital information is restricted to individuals who are given confidential login information from 1% Fitness.  Much of the key information, such as the recipe development database, is accessible by only a few 1% Fitness employees who require access to such information in order to perform their employment responsibilities.

26.     1% Fitness has additionally taken efforts to require all employees, including Boyd and Barker, to sign confidentiality agreements and the employee handbook in order to protect 1% Fitness' proprietary information.

27.     1% Fitness rigorously maintains the confidentiality of the Trade Secrets because the Trade Secrets provide 1% Fitness a competitive advantage in the marketplace from which it derives economic value.

28.     Any 1% Fitness competitor who improperly possessed and used this confidential information would gain an immediate and unfair competitive advantage.  This is so because, among other improper advantages, it would enable those competitors to (1) develop and utilize trade secret and confidential information regarding recipes and recipe development, meal construction and development, manufacturing and shipping processes, and customer needs and market demands without expending any time and resources, let alone the same degree of time and resources that 1% Fitness did; (2) quickly develop strategies and services to unfairly compete with 1% Fitness in order to diminish or erode 1% Fitness' marketplace standing; and (3) identify with surgical precision which customers and prospective customers could be targeted to undercut 1% Fitness and on precisely what terms.

29.     Boyd recognized the value of 1% Fitness' brand and its Trade Secrets.  In an analysis he prepared for 1% Fitness in 2018, Boyd wrote: "1% Fitness is a fantastic brand and has great potential.  I don't think there are a lot of companies that have the ability to do what you are doing." (emphasis added).  Boyd further observed in that analysis that

"Your concept is unique, and susceptible to competitors that will want to come in and duplicate what you have done."

### Boyd and Barker's Contractual and Fiduciary Obligations

30.     By the summer of 2018, 1% Fitness engaged Boyd as a business organizational consultant through his entity CSM.  Boyd eventually became an employee and officer of 1% Fitness.  Barker was also a management-level employee of 1% Fitness.

31.     As employees of 1% Fitness, Boyd and Barker each had fiduciary duties and duties of loyalty during their employment.  Those fiduciary duties included the duty not to compete with 1% Fitness while working for 1% Fitness, such as by actively soliciting its customers and employees, as well as the duty not to steal 1% Fitness' opportunities and property, including its Trade Secrets, for their own personal advantage or gain.

32.     Moreover, in light of the commercial importance of 1% Fitness' Trade Secrets, as a condition of each of their employment and prior to allowing them to access the Trade Secrets, 1% Fitness required Boyd and Barker to enter into contractual agreements to safeguard that information (the "Boyd NDA," and "Barker NDA," respectively, and collectively the "NDA Agreements").

33.     1% Fitness is informed and believes that Boyd, while the 1% Fitness Chief Operating Officer, made efforts to destroy the NDA Agreements, as well as the NDA Agreements of other employees or independent contractors with whom Boyd intended to continue working.  1% Fitness has been able to recover the Boyd NDA and Barker NDA only by combing through attachments to old emails and archived files.

34.     The NDA Agreements broadly define "Proprietary Information" to include any information previously, presently or subsequently disclosed directly or indirectly in

writing, orally or by inspection of tangible objects, which has commercial or other business value to 1% Fitness' business, including without limitation, designs, ideas, inventions, know-how, procedures, financial and marketing plans, product roadmaps, product plans, information about strategic partnerships, alliances, customer relationships and other business information.

35.     Boyd and Barker agreed not to directly or indirectly disclose any Proprietary Information to third parties without ensuring that those third parties were likewise bound to protect such information.

36.     Boyd and Barker further agreed not to use Proprietary Information to unfairly compete with 1% Fitness or obtain unfair advantage in any commercial activity.

37.     The NDA Agreements also prohibit Boyd and Barker from competing with 1% Fitness in the prepared health meal industry for twelve months following the termination of their employment and within 60 miles of 1% Fitness' physical facilities.

38.     The NDA Agreements also contain a provision preventing Boyd and Barker for one year following their termination from employing or inducing any employee of 1% Fitness to terminate employment with 1% Fitness.

39.     The NDA Agreements further prohibit Boyd and Barker from offering employment to any current or former 1% Fitness employee for one year after such employee's termination.

### Defendants Accessed, Learned, Used, and Copied 1% Fitness' Confidential Information

40.     In his capacity of Chief Operating Officer of 1% Fitness, Boyd managed virtually all of its business affairs and was trusted with access to all of 1% Fitness' Trade

Secrets.  In such a role, Boyd was charge with understanding and managing all of the company's valuable confidential information and important relationships.

41.    1% Fitness invested large sums over a period of nearly three years to educate and compensate Boyd.

42.    Rob Molling and Boyd spent many hours separating 1% Fitness from its competitors, developing innovative means for expanding growth through potential white label partnerships with companies, including Built Brands, LLC ("Built Bar"), Clean Simple Eats, LLC ("Clean Simple Eats"), Chow Meals, LLC ("Chow Meals"), and Fit2Fat2Fit LLC ("Fit2Fat").

43.    In all of his work and detailed strategy meetings, Boyd kept copious notes on notebooks and planners purchased by 1% Fitness, which were the property of 1% Fitness.  Boyd would prepare typed summaries or transcripts of those notes and provide them electronically to other 1% Fitness executives as he saw fit, but retained the originals.

44.    Boyd also kept a large amount of 1% Fitness' electronic information on his computer, which he manually (and perhaps selectively) backed up onto a 1% Fitness external hard drive.

45.    Other information, such as 1% Fitness' proprietary electronic calculators, were primarily stored on 1% Fitness' computer(s) but Boyd created a handful of back-up copies on USB flash drive devices.

46.    Boyd also had (and, indeed, may still have access to) 1% Fitness' confidential and proprietary recipe database, which included not just its recipes and formulas but also

its recipe development processes.  While this database required confidential login infor-mation to access, Boyd downloaded a copy of the database.

47.     When Boyd left 1% Fitness, he retained the physical notebooks, the files on his computer, and one or more of the flash drive devices, including the files containing 1% Fitness' proprietary calculators and its electronic recipe database.  This information, in-cluding many of 1% Fitness' Trade Secrets, would be sufficient for Boyd to effectively re-create 1% Fitness in a competing venture.

48.     After engaging Boyd, 1% Fitness hired more personnel, including Barker as General Manager.  As the operations officer, Boyd had responsibility for onboarding and managing those individuals.

49.     In keeping with his employment responsibilities and including as author-ized by Boyd, Barker had wide ranging access to many of 1% Fitness' Trade Secrets.

50.     Boyd had access not just to 1% Fitness' Trade Secrets and information, but also to its accounts and accounting software.  Unbeknownst to 1% Fitness, while Boyd was employed with the company, he manipulated invoices relating to his commissions in his favor, thereby causing 1% Fitness to pay him more than he had earned.

51.     After Boyd was terminated, a 1% Fitness investigation revealed that Boyd had misappropriated funds belonging to 1% Fitness, including by 1) negotiating a reduced price on equipment purchases for 1% Fitness, but invoicing 1% Fitness for the full pur-chase price of those items and keeping the difference; 2) causing 1% Fitness to pay secret commissions to employees of 1% Fitness' suppliers to build goodwill to benefit Boyd and QuickFresh; and 3) self-reporting profits on and falsify documents relating to 1% Fitness'

keto line of products, on which Boyd earned commissions, in order to intentionally over-pay himself.

**Boyd Conspires with Rookstool to Overtake 1% Fitness**

52.     In roughly October of 2020, Boyd was assigned by Rob Molling to work with Built Bar in exploring a potential white label relationship.  Built Bar was represented in these discussions by Rookstool.

53.     Boyd was responsible for ensuring that Built Bar and Rookstool signed NDA agreements protecting 1% Fitness' confidential and proprietary information but failed to do so.

54.     Over the next few months, Boyd and Rookstool spent considerable time to-gether ostensibly exploring this potential business relationship, until Rookstool eventu-ally informed 1% Fitness that Built Bar was not interested in a partnership.

55.     During this time, however, Rookstool and Boyd conspired to form QuickFresh.

56.     QuickFresh extended an offer to purchase 1% Fitness for several million dol-lars.  1% Fitness was unaware that Boyd, who was still employed by 1% Fitness, was a founder of QuickFresh and Boyd advocated for the merger from his position as a trusted employee of 1% Fitness (on information and belief, in furtherance of his personal financial interests).  Nevertheless, 1% Fitness ultimately decided not to be acquired by QuickFresh, and QuickFresh began instead to directly compete with 1% Fitness.

57.     Prior to his association with 1% Fitness, Rookstool had no experience in the manufacture and sale of pre-prepared meals.  Rather than spend the time and resources

to independently develop such expertise, Rookstool looked to Boyd as a shortcut to save the expense, risk, and time-investment required for starting such a business from scratch.

58.   Accordingly, Rookstool and Boyd used Boyd's relationships and knowledge as a connected 1% Fitness executive officer with access to all of 1% Fitness' valuable Trade Secrets to instantly replicate 1% Fitness as a competing enterprise.

59.   Indeed, while Boyd was still employed with 1% Fitness he fully exploited these relationships for the benefit of QuickFresh, going so far as to secretly order equipment for QuickFresh from a 1% Fitness' vendor using 1% Fitness' account.

60.   Boyd has continued to use or attempt to use some of 1% Fitness' accounts even following his departure for QuickFresh.

61.   On more than one occasion, Defendants were found trying to sneak sauce or spices out of 1% Fitness' facilities for purposes of reverse engineering.

62.   When 1% Fitness discovered in May, 2021 that Boyd had been secretly conspiring with Rookstool and QuickFresh, he was fired.  However, his bad behavior has continued.

63.   QuickFresh has deliberately interfered with 1% Fitness' contractual relationships.  QuickFresh has taken several white label partnerships that 1% Fitness had secured or was pursuing, including with Clean Simple Eats, Chow Meals, and Fit2Fat, and has cost 1% Fitness other important relationships such as its research with Faeth Therapeutics.  Defendants have disrupted these relationships and taken 1% Fitness' customers by exploiting 1% Fitness' Trade Secrets and on the back of 1% Fitness' work and resources.

64.     In this way, QuickFresh has wrongfully interrupted the marketplace and caused hundreds of thousands of dollars of economic loss and damages to 1% Fitness, which damages are ongoing.

65.     Boyd, Rookstool and QuickFresh have also solicited and hired Barker to leave 1% Fitness for QuickFresh.

66.     Boyd offered a job on behalf of QuickFresh to 1% Fitness employee Aaron Sprague while both Aaron Sprague and Boyd were still working for 1% Fitness, in clear violation of Boyd's contractual and fiduciary obligations to QuickFresh.  Aaron Sprague accepted this offer and worked for QuickFresh for approximately nine months.

67.     Defendants have also offered a job to 1% Fitness' current general manager, Jacob Levitch.

68.     QuickFresh has also launched features and announced partnerships that 1% Fitness had in development at the time of Boyd's departure.

69.     Adding insult to injury (and, on information and belief, to more fully exploit 1% Fitness' Trade Secrets and relationships), QuickFresh is also headquartered in Utah County, Utah, only a few miles from 1% Fitness.

70.     Launched barely six months ago in late 2021, QuickFresh has taken the marketplace by storm, quickly eroding the 1% Fitness base as a market leader.

**QuickFresh Uses 1% Fitness' Trade Secrets**

71.     It has become evident that QuickFresh has used and is currently using and benefiting from 1% Fitness' Trade Secrets.

72.    The products offered by QuickFresh, including menus, meals, ingredients, nutrients, and packaging are strikingly similar to, and appear to be copied from, 1% Fitness.

73.    1% Fitness utilizes proprietary codes in its ingredient labels.  While the codes themselves can be seen on the packaging, their functionality in 1% Fitness' confidential recipe database for purposes of recipe development are among 1% Fitness' Trade Secrets.

74.    These codes have appeared in QuickFresh's ingredient labels, including the ingredient labels of its white label partners (indeed, this is how 1% Fitness has been able to ascertain that QuickFresh has entered into certain white label partnerships with 1% Fitness' former partners and prospective targets).

75.    The use of these codes conclusively demonstrates that QuickFresh has used the 1% Fitness confidential recipe database to develop its own meals.

76.    While many of the codes have since been removed, QuickFresh continues to offer the same products that once included those codes on their nutrition labels and, on information and belief, is continuing to use 1% Fitness' database and processes to develop additional products.

### Quick Fresh Infringes 1% Fitness' Trademark Rights

77.    Not content to just raid 1% Fitness' Trade Secrets, QuickFresh has also misappropriated 1% Fitness' intellectual property and engaged in false advertising to claim 1% Fitness' success as its own.

78.    QuickFresh adopted 1% Fitness' marketing slogan, "HEAT. EAT. REPEAT." which is included in and protected by 1% Fitness' registered U.S. trademark.  A copy of

that trademark is attached hereto as Exhibit D (Reg. No. 5805131, registered July 16, 2019).

79.     QuickFresh also used a false weight-loss testimonial provided by Defendant Jody Rookstool's brother, Jeremy Rookstool, to promote its products.  However, Jeremy Rookstool was a customer of 1% Fitness who used 1% Fitness' products to obtain these results.

80.     Indeed, the testimonial appeared on QuickFresh's website at least as early as May 23, 2021, months before QuickFresh had launched any products of its own.

81.     Jeremy Rookstool had purchased lunch and dinners for a full 8 weeks on the keto quick start plan from 1% Fitness on February 26, 2021, March 5, 2021, March 12, 2021, March 19, 2021, April 16, 2021, and April 23, 2021.

82.     QuickFresh used this false testimonial to promote its meal plan and business when in fact it knew that Jeremy Rookstool's success was from 1% Fitness products rather than QuickFresh products.

## FIRST CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS
### 18 U.S.C. §§ 1831 *et seq.*
### (Against All Defendants)

83.     1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

84.     The Defend Trade Secrets Act ("DTSA") defines "trade secret" to include all forms and types of financial, business, or economic information, including patterns, plans, compilations, methods, techniques, processes, procedures or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret and (B) the

information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public. *See* 18 U.S.C. §§ 1836, 1839.

85.     Defendants acquired and are using 1% Fitness' Trade Secrets by improper means and without authorization.  In particular, as outlined above, Defendants obtained the Trade Secrets from 1% Fitness through Boyd's employment with 1% Fitness, under which circumstances Boyd owed 1% Fitness contractual and fiduciary duties to safeguard those Trade Secrets.

86.     As detailed above, 1% Fitness takes reasonable and appropriate measures to protect the confidentiality of its Trade Secrets.

87.     Defendants knew or should have known that 1% Fitness' Trade Secrets: (a) are confidential; (b) were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; (c) were developed or acquired by 1% Fitness at great expense and effort; (d) are maintained as confidential and are not generally available to the public or 1% Fitness' competitors; (e) would provide significant benefit to a competitor seeking to compete with 1% Fitness; and (f) are critical to 1% Fitness' ability to conduct its business successfully.

88.     By disclosing and using 1% Fitness' Trade Secrets, Defendants have misappropriated and threatened to misappropriate 1% Fitness' Trade Secrets in violation of the DTSA.

89.     The information that Defendants have misappropriated relates to 1% Fitness' products and services that are sold in, utilized through, and travel through interstate commerce.

90.     Defendants' continued use and disclosure of 1% Fitness' Trade Secrets harms and threatens to continue to harm 1% Fitness and its legitimate business interests.

91.     Defendants' actions were willful and malicious.

92.     Because Defendants' conduct is ongoing and poses a threat of significant irreparable harm, 1% Fitness requests that this Court grant injunctive relief against Defendants in addition to actual, incidental, compensatory, consequential, and punitive damages, as well as costs and attorney's fees.

## SECOND CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS
### Utah Code §§ 13-24-1, *et seq*.
### (Against All Defendants)

93.     1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

94.     The Utah Trade Secrets Act ("UTSA") defines "trade secret" to include information that (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons and (B) is subject to reasonable efforts to maintain its secrecy.  *See* Utah Code § 13-24-2(4).

95.     Defendants acquired and are using 1% Fitness' Trade Secrets by improper means and without authorization.  In particular, as outlined above, Defendants obtained the Trade Secrets from 1% Fitness through Boyd's employment with 1% Fitness, under

which circumstances Boyd owed 1% Fitness contractual and fiduciary duties to safeguard those Trade Secrets.

96.     As detailed above, 1% Fitness takes reasonable and appropriate measures to protect the confidentiality of its Trade Secrets.

97.     Defendants knew or should have known that 1% Fitness' Trade Secrets: (a) are confidential; (b) were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; (c) were developed or acquired by 1% Fitness at great expense and effort; (d) are maintained as confidential and are not generally available to the public or 1% Fitness' competitors; (e) would provide significant benefit to a competitor seeking to compete with 1% Fitness; and (f) are critical to 1% Fitness' ability to conduct its business successfully.

98.     By disclosing and using 1% Fitness' Trade Secrets, Defendants have misappropriated and threatened to misappropriate 1% Fitness' Trade Secrets in violation of the DTSA.

99.     Defendants' continued use and disclosure of 1% Fitness' Trade Secrets harms and threatens to continue to harm 1% Fitness and its legitimate business interests.

100.     Defendants' actions were willful and malicious.

101.     Because Defendants' conduct is ongoing and poses a threat of significant irreparable harm, 1% Fitness requests that this Court grant injunctive relief against Defendants in addition to actual, incidental, compensatory, consequential, and punitive damages, as well as costs and attorney's fees.

## THIRD CAUSE OF ACTION

**UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**
**(Against QuickFresh)**

102.   1% Fitness incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

103.   On information and belief, QuickFresh's actions in commerce, including enticing customers through the use of false advertisements including the Jeremy Rookstool testimonial, are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of the QuickFresh's goods as to the origin, sponsorship, or approval of the QuickFresh's goods by 1% Fitness.

104.   QuickFresh's actions as described above have also caused and are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of QuickFresh with 1% Fitness, or as to the origin, sponsorship, or approval of QuickFresh's goods or commercial activities by 1% Fitness, and thus constitute false designations of origin, deceptive trade practices, and trademark infringement.

105.   QuickFresh committed the acts alleged above with the previous knowledge of 1% Fitness' rights in the testimonials.

106.   Further, QuickFresh's actions were for the willful and calculated purpose of trading upon 1% Fitness' goodwill and for the willful and calculated purpose of misleading and deceiving purchasers, the public and prospective white label participants, with an intent to reap the benefit thereof.

107.   QuickFresh has intended to divert consumers and contract partners from 1% Fitness and to harm 1% Fitness' goodwill.

108.   1% Fitness has been damaged extensively as a result of QuickFresh's unlawful conduct.

109.   By reason of QuickFresh's acts of false designation as alleged above, 1% Fitness has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained.

110.   QuickFresh's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with 1% Fitness to 1% Fitness' great and irreparable harm.

111.   QuickFresh caused and is likely to continue causing substantial injury to the public and to 1% Fitness, and 1% Fitness is entitled to injunctive relief and to recover QuickFresh's profits, 1% Fitness' actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## FOURTH CAUSE OF ACTION

### COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT
### (Against QuickFresh)

112.    1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

113.   1% Fitness has invested, and continues to invest, significant time, money, and other resources in marketing its products and creating goodwill in 1% Fitness.

114.   At all relevant times, QuickFresh has been a direct competitor of 1% Fitness, with both companies engaged in the business of making, marketing and selling health-oriented, pre-packaged meals in interstate commerce.

115.    At all relevant times, QuickFresh knew it was using 1% Fitness' "Heat. Eat. Repeat." slogan and testimonials of 1% Fitness in marketing QuickFresh's products, which actions constitute common law trademark infringement and unfair competition.

116.    QuickFresh acted with full knowledge of 1% Fitness' use of, and statutory and common law rights, without regard to the likelihood of confusion of the public caused by QuickFresh's activities.

117.    QuickFresh's actions as identified herein have caused, and continue to cause damage to 1% Fitness' business, reputation, goodwill, and the loss of sales and profits 1% Fitness would have made, but for QuickFresh's acts.

118.    As a result of QuickFresh's acts, 1% Fitness has been damaged in an amount not yet determined or ascertainable.  At a minimum, however, 1% Fitness is entitled to injunctive relief, to an accounting of QuickFresh's profits, damages, and costs, and to a disgorgement of QuickFresh's profits and/or compensatory damages to 1% Fitness for its injuries.

119.    Further, in light of the deliberate and malicious use of 1% Fitness' intellectual property and consumer testimonials, and given the need to deter QuickFresh from engaging in similar conduct in the future, 1% Fitness is additionally entitled to punitive damages.

### FIFTH CAUSE OF ACTION

### TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114
### (Against QuickFresh)

120.    1% Fitness incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

121.    1% Fitness holds a registered trademark that includes its marketing slogan "Heat. Eat. Repeat."

122.    That trademark, No. 5805131, has been in use in commerce since at least February 10, 2018, and is registered in connection with International Class 43, for "Food preparation services featuring fresh, properly proportioned, healthy meals designed to fuel metabolism and burn fat and made to order for delivery or pick up; Food preparation services featuring Fresh, packaged healthy meals; Providing personalized meal planning services via a website."

123.    QuickFresh has used and is using 1% Fitness' slogan "Heat. Eat. Repeat." in connection with the sale, distribution, and advertising of its goods and services, including food preparation services for fresh, packaged, healthy meals for delivery, in interstate commerce.

124.    Such use is further likely to cause, and on information and belief have caused, confusion or mistake, or to deceive as to the affiliation, connection, or association of the QuickFresh's goods as to the origin, sponsorship, or approval of the QuickFresh's goods by 1% Fitness.

125.    QuickFresh committed the acts alleged above with the previous knowledge of 1% Fitness' rights in the "Heat. Eat. Repeat." Slogan, which Boyd assisted QuickFresh in registering.

126.    QuickFresh's use of the slogan is confusingly similar to, and infringes upon, 1% Fitness' federally registered mark in violation of 15 U.S.C. § 1114.

127.    QuickFresh's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with 1% Fitness to 1% Fitness' great and irreparable harm.

128.    QuickFresh caused and is likely to continue causing substantial injury to the public and to 1% Fitness, and 1% Fitness is entitled to injunctive relief and to recover QuickFresh's profits, 1% Fitness' actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SIXTH CAUSE OF ACTION

### EMBEZZLEMENT
### (Against Boyd)

129.     1% Fitness incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

130.    Boyd was charged with custody of various properties of 1% Fitness, or had constructive custody over the same, and caused these properties, including monies, to be stolen from 1% Fitness for Boyd's benefit.

131.    Boyd misappropriated assets of 1% Fitness for his own benefit, including cash.

132.    Boyd is liable to 1% Fitness for embezzlement in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT
### (Against Boyd, CMS and Barker)

133.    1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

134.     Defendants Boyd, CMS, and Barker signed valid agreements under Utah law during their employment/work with 1% Fitness.  Those agreements and handbook impose valid and enforceable obligations on Defendants, including obligations during their employment and continuing thereafter, to protect 1% Fitness's Trade Secrets, to respect the confidentiality of 1% Fitness' confidential and proprietary information, noncompetition, and not to use or disclose the same.  Agreements related to Defendants Boyd and Barker also contain restrictive covenants relating to solicitation of 1% Fitness employees and former employees.

135.     These Defendants have materially breached these agreements by among other things: (a) misappropriating and misusing 1% Fitness' Trade Secrets and confidential information; (b) competing with 1% Fitness during and after their employment with 1% Fitness; and (c) competing with 1% Fitness by creating a competitive system and enterprise and planning to produce and sell rival products using trade secrets, proprietary property and confidential information belonging to 1% Fitness, and (d) inducing or attempting to induce employees and former employees to work with them and QuickFresh.

136.     Specifically regarding noncompetition, the agreements provide, *inter alia*, that each agrees "that for a period of twelve (12) months from the date of termination of this Agreement, [they] shall not commence development, leasing and/or construction, or open for business, any specialty healthy eating type subscription services food program within 60 miles of any 1% Fitness locations."

137.     QuickFresh, located in Springville, Utah, is within 60 miles of the Lehi, Utah headquarters of 1% Fitness, which places Defendants Boyd and Barker in breach.

138.    1% Fitness has been irreparably injured as a result of their respective breaches.

139.    1% Fitness is entitled to full compensatory and consequential damages, as well as injunctive relief.

## EIGHTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY
### (Against Boyd and Barker)

140.    1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

141.    As employees, managers, and (in Boyd's case) corporate officers of 1% Fitness trusted with responsibility in managing 1% Fitness' business, Boyd and Barker owed fiduciary duties to the company.

142.    These included a duty of loyalty to act in the best interests of the company, to safeguard and protect company property, and not to compete or interfere with 1% Fitness' legitimate business interests.

143.    Boyd and Barker schemed with other Defendants to create a competing enterprise and did copy, disclose and use 1% Fitness' Trade Secrets and proprietary and confidential information obtained while they were 1% Fitness employees in a position of trust.

144.    Boyd also breached his fiduciary duties by competing with 1% Fitness while still employed by 1% Fitness, by promoting the merger of 1% Fitness and QuickFresh within 1% Fitness without disclosing his affiliation with QuickFresh, by falsifying invoices and accounting records and covertly structuring transactions to take money from 1%

Fitness, by soliciting 1% Fitness employees to work for QuickFresh while he was still an officer of 1% Fitness, and by using 1% Fitness' relationships and accounts for QuickFresh's benefit and while concealing these activities from 1% Fitness.

145.    Such breaches of the Management Defendants' breaches of duties were intentional or in conscious disregard and with willful blindness to a substantial and unjustifiable risk that the conduct would violate the Management Defendants' fiduciary duties, and involved knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior, so as to constitute defalcation.

146.    Such breaches further were willful and malicious or intentionally fraudulent, or manifested reckless indifference toward and disregard of 1% Fitness' legal rights.

147.    As a result of the Management Defendants' breaches of their fiduciary duties, 1% Fitness has been injured irreparably.

148.    1% Fitness is entitled to full compensatory and consequential damages, as well as punitive damages and full injunctive relief.

## NINTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE
### (Against all Defendants)

149.    1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

150.    Defendants Boyd, CMS, and Barker had obligations of confidentiality and loyalty to 1% Fitness through their employment as senior executives and managers.

151.    As described elsewhere in the allegations, those Defendants also were bound by valid and enforceable agreements which contain covenants that restrict the activities in which employees can engage during and after their employment.

152.    Defendants Rookstool and QuickFresh were aware of these obligations and, on information and belief, contractual obligations.

153.    Defendants Rookstool and QuickFresh, intentionally interfered with these obligations and 1% Fitness' agreements with Defendants Boyd, Barker, and CMS, as well as Aaron Sprague, by causing them to leave their employment 1% Fitness, to violate their respective contractual agreements not to disclose or use 1% Fitness' Trade Secrets and proprietary and confidential information, to compete against 1% Fitness, and to take steps to conceal their violations.

154.    Defendants Boyd and Rookstool interfered with these obligations and agreements through improper means, namely subterfuge and violations of established standards.

155.    1% Fitness has also spent tremendous resources developing contractual relationships with industry partners, including through white label partnerships.

156.    Defendants were aware of these current and prospective contractual relationships.

157.    Defendants intentionally interfered with these current and prospective contractual relationships and have caused several entities to cease doing business with 1% Fitness.

158.    Defendants interfered with these contractual relationships through improper means, including misappropriation of 1% Fitness' Trade Secrets and the Management Defendants' breach of their contractual obligations to 1% Fitness.

159.    As a result of Defendants' tortious interference with obligations and 1% Fitness' contracts, 1% Fitness has been injured irreparably.

160.    1% Fitness is entitled to full compensatory and consequential damages.

## TENTH CAUSE OF ACTION

### CIVIL CONSPIRACY
### (Against All Defendants)

161.    1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

162.    There is or was an agreement between each of the Defendants to accomplish, or in furtherance of, the acts constituting the violations of 1% Fitness' rights and the causes of action alleged herein and said agreement facilitated the unlawful objectives of one or more of the Defendants.

163.    Two or more of the Defendants combined, and by concerted action have sought to, and did, misappropriate, convert, use, broker and/or sell 1% Fitness' confidential information.

164.    On information and belief, Defendants combined with one or more other person or business entity, and by concerted action have sought to compete with 1% Fitness by engaging in acts of unfair competition, breach of contract, wrongful business practices, fraud, theft and/or conversion.

165.    1% Fitness is entitled to a judgment against each Defendant found to have participated in the civil conspiracy alleged above for the entire amount of the damages 1% Fitness has sustained as a result thereof.

166.    Each Defendant found to have participated in the civil conspiracy is jointly and severally liable for full compensatory and consequential damages proven with respect to each cause of action.

**ELEVENTH CAUSE OF ACTION**

**CONSTRUCTIVE TRUST**

167.    1% Fitness realleges and reincorporates each of the preceding paragraphs as though fully set forth herein.

168.    1% Fitness is entitled to have a constructive trust in its favor imposed on all proceeds arising from the use of 1% Fitness' confidential information as well as all proceeds arising from Defendants' use and misappropriation of 1% Fitness' proprietary confidential information and Trade Secrets in an amount of at least the value of all gains, profits and unjust enrichment made by QuickFresh using any 1% Fitness property, which includes all of QuickFresh's profits, gains and unjust enrichment since its conception.

**PRAYER FOR RELIEF**

WHEREFORE, on the above claims, 1% Fitness prays for judgment against Defendants as follows:

For a judgment holding Defendants jointly and severally liable to 1% Fitness, as specified on each of 1% Fitness' alleged claims for relief;

Enjoining each Defendant, and all other persons participating or acting in concert with them, from misappropriation of or otherwise using 1% Fitness' confidential

information, including 1% Fitness' trade secrets, proprietary and confidential information, derivatives thereof, and other intellectual property to compete against 1% Fitness;

Fully enforcing all contractual covenants and specifically enjoining each Defendant, and all other persons participating or acting in concert with them, from competing in violation of any of the restrictive covenants of the respective agreements between themselves and 1% Fitness, and from accessing, reproducing, copying, misappropriating, converting, brokering, and/or selling 1% Fitness' trade secrets, proprietary and confidential information, and derivatives thereof;

Enjoining each Defendant, and all other persons participating or acting in concert with them, from using, distributing and disseminating any of the trade secrets or other confidential information belonging to 1% Fitness that were misappropriated by Defendants;

Ordering each Defendant to surrender to the Court or to 1% Fitness all copies of 1% Fitness' confidential information, trade secrets and intellectual property, together with all articles (*i.e.*, computers, mobile phones, paper files, briefcases or bags, etc.) by means of which further copies or repositories of any such materials may be made or maintained;

Ordering each Defendant to prepare an accounting of all proceeds generated by Defendants through the use of 1% Fitness' confidential records and information, trade secrets and intellectual property;

Ordering each Defendant to file with this Court and serve on 1% Fitness within thirty (30) days after service on the Defendants of the injunction granted herein, or such

extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction and order of the Court;

Awarding 1% Fitness damages for actual loss caused by the misappropriation of their trade secrets, damages for any unjust enrichment caused by the misappropriation of the trade secrets, and such other damages and awards available, enhanced damages available under federal and state laws, including under the DTSA, 18 U.S.C. § 1836(b)(3);

In lieu of damages measured by other methods, pursuant to the DTSA, 18 U.S.C. § 1836(b)(3)(B)(ii) and Utah Code § 13-24-4(1), awarding 1% Fitness damages caused by Defendants' misappropriation measured by imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure of or use of each of 1% Fitness trade secrets (*i.e.*, assessment of a royalty for each confidential file or record);

Awarding 1% Fitness enhanced or treble their damages and Defendants' profits as applicable under state or federal laws;

Awarding 1% Fitness damages for actual loss caused by such other wrongful conduct of Defendants for which Defendants may be liable, damages for the unjust enrichment caused by such wrongful conduct of Defendants, and exemplary damages for Defendants' willful and malicious actions;

Imposing a constructive trust in favor of 1% Fitness on all proceeds generated by Defendants through the use of 1% Fitness' confidential patient information, trade secrets and intellectual property;

Awarding 1% Fitness its attorneys' fees and other costs of bringing this action;

Awarding 1% Fitness pre-judgment and post-judgment interest until such awards are paid in full; and

Awarding 1% Fitness such other and further relief as is just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 10-1(7) of the Central District of Utah, 1% Fitness hereby demands trial by jury on all issues raised by the Complaint.

DATED:  June 21, 2022.

SNOW, CHRISTENSEN & MARTINEAU

By_____
      Rodney R. Parker
      *Attorneys for Plaintiff*